### CONWAY v. STATE.

(Division B. Dec. 7, 1936.)

[171 So. 16. No. 32444.]

462

Jeff Collins, of Laurel, for appellant.

464

**Earle L. Wingo,** of Hattiesburg, for appellant.

**Webb M. Mize**, Assistant Attorney-General, for the state.

Argued orally by **Jeff Collins,** for appellant, and by **Webb M. Mize,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant was tried in the circuit court of Perry county for the crime of the murder of one Abe Culpepper and convicted of manslaughter. He was sentenced to the penitentiary for a term of fifteen years, and from that judgment he prosecutes this appeal.

Appellant and Culpepper, the deceased, were brothers-in-law, the former having married the sister of the latter. They lived in the country in Perry county about half a mile apart. There were other families in the neighborhood. Appellant shot Culpepper to death with a pistol in the latter's home between seven and eight o'clock at night. The evidence leaves it uncertain as to

whether there were two or three pistol wounds. Besides his wife, Culpepper had a daughter about eighteen years old and a son about sixteen by a former marriage; his wife, therefore, was their stepmother. She and the two children were the only eyewitnesses to the homicide. All three of them testified on behalf of appellant and made out a case of killing in self-defense.

The state's main reliance for conviction were Culpepper's dying declarations. He lived only a few hours after he was shot. Several witnesses testified that Culpepper made statements in their presence which, if true, showed he had been murdered by appellant. These statements were sufficiently qualified to justify their admission. The evidence showed, or tended to show, that when they were made Culpepper was mortally wounded and realized it, and, further, that death was then upon him—that he was in extremis.

Over appellant's objection Ira Pitman was permitted to testify before the jury as to the dying declarations without giving the facts which qualified them for admission. He had given the qualifying evidence before the court in the absence of the jury. Appellant's contention is that he had the right to have it repeated before the jury in order that the jury might intelligently pass upon the credibility and weight of the dying declarations. We are of the opinion that his contention is well founded. The authorities are not unanimous on this proposition, but in number and weight they sustain that contention. The procedure is, first, the court passes on the question, and if the evidence of qualification is sufficient it is submitted to the jury, then the evidenc given before the court is repeated before the jury. 30 C. J., pp. 267, 268, secs. 506 and 507. This question has not been directly passed upon by our court, but the principle is necessarily recognized in Jones v. State, 70 Miss. 401, 12 So. 444; Jackson v. State, 94 Miss. 83, 47 So. 502; Nelms v. State, 13 S. & M. 500, 53 Am.

Dec. 94; Brown v. State, 32 Miss. 433, and Chase v. State, 147 Miss. 694, 112 So. 785. We are of the opinion, however, that under the particular facts of this case that error was harmless. Other witnesses whose evidence was undisputed testified before the jury to facts showing that the declarations were made in extremis. We would not reverse the judgment on that ground.

Appellant made a motion for a new trial, one of the grounds of which was that the verdict of the jury was against the weight of the evidence. We are of the opinion that the motion should have been sustained on that ground. Here we have a case where all the eyewitnesses (and it should be borne in mind that they were, besides appellant, the son, daughter, and wife of the deceased) made out a case of self-defense, and the state relied for conviction on the dying declarations alone. Such declarations are a species of hearsay evidence which are admitted for reasons of public necessity. Before they can be admitted the state must prove that they were made by the deceased under a sense of impending death and after all hopes of recovery had passed. When thus made, the declarant is supposed to have been relieved from temptation of falsehood, to be under as strong an obligation to speak the truth as if he were sworn to do so. In other words, that situation, in a way, supplies the sanctity of an oath. However, such declarations should be admitted with caution and weighed by the jury with the greatest deliberation. In the nature of things they carry elements of weakness, the memory of the declarant may be impaired by his wounds, or it may be impaired by the excitement and confusion of the difficulty; there is a possibility of the declarant mistaking inferences from facts. Furthermore, the person committing the homicide is deprived of the right of cross-examination which is a very valuable right. The jury is deprived of his presence, his manner, and deportment on the witness stand, which is also often valuable. Brown v. State, supra.

This is not a case for a directed verdict of not guilty, but it is a case where we think the jury went against the preponderance of the evidence. It is rare that a trial, or an appellate, court is justified in setting up its judgment against that of the jury on an issue of fact, nevertheless it should do so in a proper case, and we think this is one of that character. This can only be done twice under section 592, Code of 1930; after that, if the jury shall find a third verdict of guilty, then such verdict must stand; in other words, the court can say to the jury twice, but no more, "we think you are wrong," if the jury persists after that, then the law says, "the jury is right and the court is wrong."

We find no other error in the record that could have had any influence with the jury.

Reversed and remanded.