## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1999-CT-00202-SCT

*ONEALIUS TERRELL SHEPPARD*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/18/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/22/2000 |
| MOTION FOR REHEARING FILED: | 1/4/2001; denied 2/22/2001 |
| MANDATE ISSUED: | 3/1/2001 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Onealius Terrell Sheppard was indicted for murder by the Hinds County Grand Jury for the shooting death of Emanuel Fox. Sheppard was convicted of the lesser offense of manslaughter and sentenced to twenty years. Sheppard appealed to this Court which assigned the case to the Court of Appeals. The Court of Appeals affirmed the judgment of the circuit court by opinion dated May 23, 2000. *Sheppard v. State*, No. 1999-KA-00202-COA. Sheppard's motion for rehearing was denied by order entered August 1, 2000. This Court granted Sheppard's petition for writ of certiorari.

### STATEMENT OF THE FACTS

¶2. Emanuel Fox was killed by a gunshot to his abdomen on September 2, 1997, while standing on his front porch. Present with him were his brother, John Fox, and Larry Womack and Onealius Sheppard. There is no real dispute that Onealius Sheppard fired the fatal shot. However, few other common facts are agreed between the State and the defense.

¶3. The State contends that Sheppard and his cousin, Larry Womack, came to Fox's home in the early morning hours of September 2, 1997, and that Womack became involved in a physical altercation with the victim. The noise of the fight awoke Fox's brother, John, who came outside to help. At this time, Womack

separated himself from Fox, jumped off the front porch, turned and fired several shots in Fox's direction. At the same time, Sheppard, who had been standing in the front yard, fired an additional shot that struck Fox in the side.

¶4. Sheppard's theory of the case, on the other hand, was that he and Womack came to Fox's home to make a marijuana purchase. Sheppard waited outside while Womack went inside to consummate the transaction. Womack testified that he had been in a prior dispute with the Fox brothers about some stolen marijuana and that when he entered the home, he observed marijuana in plain view. When asked purchase some of the drug, John Fox left the room rather than filling Womack's purchase request from the plainly visible marijuana. Womack became uneasy and got up to leave. However, Emanuel tried to grab him. At that point, John Fox re-entered the room armed with a rifle or a shotgun but did not fire it in apparent concern over striking his brother by accident. Womack then broke from Emanuel, ran from the room, and jumped off the porch. Fearing for their safety, Womack and Sheppard fired their weapons at the house in self-defense while fleeing the scene.

¶5. Sheppard was tried for murder but convicted on the lesser offense of manslaughter in the Circuit Court of the First Judicial District of Hinds County. The Court of Appeals affirmed Sheppard's conviction. Sheppard petitioned this Court for writ of certiorari on August 7, 2000, alleging four separate errors. This Court granted certiorari on the following two issues.

## DISCUSSION

**1) THE COURT OF APPEALS ERRED IN RULING THAT NO REVERSIBLE ERROR RESULTED FROM THE STATE'S CLOSING ARGUMENTS WHEREIN THE PROSECUTOR TOLD THE JURY THAT HE WANTED THE JURORS TO TELEPHONE HIM AFTER THE TRIAL IF THE JURY RETURNED A NOT GUILTY VERDICT AND EXPLAIN TO HIM THEIR RATIONALE.**

¶6. In his closing argument the prosecutor stated that if the jury voted to acquit, he wanted them to call him and explain their rationale of finding the defense witnesses credible, so he could explain it to the victim's family. The defense counsel's objection to these statements was overruled. While the Court of Appeals found this argument "improper" and condemned it "in no uncertain terms," it found that the brief remarks did not sufficiently undermine the integrity of the trial to amount to reversible error.

¶7. Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. *Hiter v. State*, 660 So.2d 961, 966 (Miss. 1995). The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created. *Ormond v. State*, 599 So.2d 951, 961 (Miss. 1992). Sheppard cites *Williams v. State*, 445 So.2d 798 (Miss. 1984), in which a very similar line of closing argument was made by the State which gave the jurors the impression that they would be asked to explain their verdict after the trial. The circuit court sustained two defense objections to these statements and denied a request for mistrial. In finding that the statements by the prosecutor were improper, this Court stated:

The purpose of a closing argument is to fairly sum up the evidence and to point out those facts

presented by the state on which the prosecution contends a verdict of guilty would be proper. ***Clemons v. State***, 320 So.2d 368 (Miss. 1975). Counsel "cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudice of men by injecting prejudices not contained in some source of the evidence." ***Nelms & Blum Co. v. Fink***, 159 Miss. 372, 131 So. 817, 821 (1930).

***Williams***, 445 So.2d at 808-09. Although the statements by the prosecutor were improper, the ***Williams*** Court found that by sustaining the defense counsel's objections to the prosecutor's remarks, the trial court cured the error. ***Id.*** at 809.

¶8. The State contends that the prosecutor was arguing about the credibility of a defense witness which was an appropriate matter for closing argument. The State further argues that the prosecutor's statements in the case sub judice are distinguishable from the statements made in ***Williams*** because the prosecutor in this case was discussing evidence that was before the jury.

¶9. The Court of Appeals was correct in stating that the only legitimate purpose of the statements by the prosecutor was to suggest to the jury that it would be accountable to the prosecution and the victim's family for its decision and that the jurors could be required to justify a verdict of not guilty. Similar to ***Williams***, the prosecutor's remarks in the case sub judice had nothing to do with the evidence presented during the trial, nor with any reasonable conclusions or inferences to be drawn from the evidence presented in the case. The purpose of the remarks was to prejudice the defense, as well as to give the jurors the impression that if they did not convict, the prosecutor was going to subject them to personal ridicule, embarrassment, and questioning. Unlike ***Williams***, the trial court in the case sub judice overruled defense counsel's objection to the improper statements by the prosecutor, thus allowing the error to stand.

¶10. "In numerous contexts this Court has held that a verdict based on anything other than the evidence of the crime is tainted and where it is the result of bias, passion, or prejudice it cannot stand." ***Fuselier v. State***, 468 So.2d 45, 53 (Miss. 1985). The natural and probable effect of the prosecutor's improper statements was the creation in the minds of the jurors of an extra-legal burden of accountability to the State prejudicial to the rights of the accused. We find that the prosecutor's statements during closing arguments constitute reversible error.

### 2) THE COURT OF APPEALS ERRED IN RULING THAT SHEPPARD WAS NOT ENTITLED TO A JURY INSTRUCTION CONCERNING THE DEFENSE OF ANOTHER PERSON.

¶11. The trial court granted a self-defense instruction, S-5, which reads as follows:

The Court instructs the Jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or do him some great bodily harm, and in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the Jury to determine the reasonableness of the ground upon which the defendant acts.

This instruction is identical to the instruction recommended by this Court for self-defense cases in ***Robinson v. State***, 434 So.2d 206, 207 (Miss. 1983), *overruled on other grounds*, ***Flowers v. State***,

473 So.2d 164, 165 (Miss. 1985). Sheppard objected to S-5 as being incomplete and requested instructions D-12 and D-18 which incorporated the **Robinson** self-defense instruction and language for the defense of another. However, both instructions were refused.

¶12. "[I]t must first be noted that a trial court is not required to instruct a jury over and over on a point of law even though some variations are used in different instructions. Further, if when all instructions are read together, the jury is fully and fairly instructed by other instructions the refusal of other similar instructions is not reversible error." **Calhoun v. State**, 526 So.2d 531, 533 (Miss. 1988)(citation omitted).

¶13. The Court of Appeals found that Sheppard was entitled to a self-defense instruction, but not to one including the defense of his companion, Larry Womack. Sheppard argues that this decision is contrary to this Court's decision in **Calhoun**. In **Calhoun**, the defendant was convicted of the murder of a man who had threatened him and his girlfriend. **Id.** at 533. The defendant shot the victim who appeared to be reaching for a weapon, although none was found. The trial court granted a jury instruction on self-defense, but denied the defendant's requested instruction on the defense of another. **Id.** This Court found that evidence in the record of threats made against the girlfriend as well as the defendant warranted the requested instruction, as other instructions were insufficient, and it was reversible error to deny the instruction on defense of another. **Id.**

¶14. In this case, Larry Womack testified that he and his cousin, Onealius Sheppard, went to the Fox house to purchase marijuana. Womack stated that he had heard that the Foxes were angry with him but later decided that everything was "cool." Womack went into the house, and Sheppard stayed outside. Womack tried to buy some marijuana but alleged that John Fox, instead of reaching for the marijuana, went to his closet. Womack decided at that time that Fox was going for a gun and tried to run, but Emanuel Fox grabbed him in the door of the house where they wrestled. Womack broke free, jumped off the porch, and yelled at Sheppard to watch out when he saw John Fox coming with a rifle or shotgun. Both Womack and Sheppard were armed with pistols, and both fired at least one shot at the Foxes, with one of Sheppard's shots striking Emanuel Fox.

¶15. Womack stated that while there may have been bad blood between himself and the Foxes, he felt that this was over when he went to the Fox house. "Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for its decision." **Anderson v. State**, 571 So.2d 961, 964 (Miss. 1990). It is clear from the record that a rational jury could find for Sheppard on this issue. Therefore, a "defense of others" instruction should have been given.

¶16. By requesting a defense of others instruction, it is apparent that Sheppard sought to inform the jury that self-defense may be applicable where a defendant reasonably believed that another person, in addition to himself, may be in danger of imminent death or great bodily injury. Sheppard presented evidence of threats made by the decedent and his brother against Larry Womack, as well as evidence that John Fox had a weapon on the night of Emanuel's death.. In failing to inform the jury that Sheppard could act in the defense of Larry Womack, the trial court's instructions concerning this area of law were deficient. Consequently, Sheppard's verdict and sentence are reversed.

¶17. This argument leads to another issue which was not raised by Sheppard but appears to be plain error. The State's instruction, S-5 on self-defense, did not instruct the jury as to what it should do if it found that Sheppard did in fact act in self-defense. This Court has found Instruction S-5, given without any additional

instruction, to be reversible error. *Reddix v. State*, 731 So.2d 591 (Miss. 1999). In *Reddix*, this Court held that this instruction, recommended to prosecutors in **Robinson**, "while fine for the State, is not sufficient as a neutral self-defense instruction." *Id.* The Court explained that the instruction "is couched in prosecutorial terms and fails to state that self-defense is, in fact, a defense. In other words, the instruction failed to notify the jury it was bound to acquit Reddix if it found that he acted in self-defense. Assuming as we do that juries follow the instructions given to them by the trial court, this means the jury could not have acquitted Reddix based upon self-defense because it was not informed of any law permitting them to do so." *Id.* Even Sheppard's refused instruction on defense of others instructed the jury that Sheppard should be acquitted if the jury found that he acted in self-defense. As it was, the jury was not instructed on this point at all, and this omission constitutes error which warrants reversal.

## CONCLUSION

¶18. The prosecutor's statements during closing argument, and the trial court's failure to give a "defense of others" instruction as well as its failure to instruct the jury on what verdict to return if it determined that Sheppard acted in self-defense constitute reversible error. Accordingly, the judgments of the Court of Appeals and the Circuit Court of Hinds County are reversed, and this case is remanded for a new trial consistent with this opinion.

¶19. **REVERSED AND REMANDED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, WALLER AND COBB, JJ., CONCUR. SMITH AND DIAZ, JJ., NOT PARTICIPATING.**